**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **PORTLAND PUBLIC SCHOOLS**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No._____ |
| ) | |
| **MR. AND MS. DOE**, on their own ) | |
| behalf and as legal guardians of ) | |
| **JOHN DOE,** ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Portland Public Schools (hereinafter, "Plaintiff" or "Portland") files this action against Defendants Mr. and Ms. Doe,[1] asserting as follows:

### PARTIES

1.      This is an action commenced under the Individuals with Disabilities Education Act, as amended, 20 U.S.C. §§ 1400 *et seq*. ("IDEA"), supplemented by Maine's laws regarding the education of students with disabilities, 20-A M.R.S. §§ 7000 *et seq*., and both federal and state implementing regulations.

2.      Plaintiff Portland Public Schools (hereinafter, "Portland" or "PPS") is the municipal school unit responsible for educating students who are residents of Portland, Maine.

3.      Defendants Mr. and Ms. Doe are (the "Parents") are residents of Portland. They are the parents and legal guardians of John Doe, a 12-year-old student who qualifies for special education under the category of autism.

---

[1] Plaintiff has filed a Motion to proceed under aliases that accompanies this Complaint.

1

**JURISDICTION AND VENUE**

4.      The Court has subject matter jurisdiction over this action pursuant to both the IDEA, 20 U.S.C. § 1415(i)(2)(A) (IDEA), as well as 28 U.S.C. § 1331 (federal question).

5.      On or about December 31, 2025, the Parents filed a special education due process complaint against Portland with the Maine Department of Education.

6.      The Parents' due process complaint sought an order: (1) declaring Portland's December 2025 Individualized Education Program ("IEP) and placement offer to be inappropriate; (2) "an IEP and continued placement for [John] at Aucocisco School;" and, (3) "maintenance of [John's] publicly-funded placement at Aucocisco under 20 U.S.C. § 1415(j) during the pendency of these proceedings."

7.      The Maine Department of Education captioned the administrative proceedings as *[Doe] v. Portland Public Schools*, Case No. 26.057H, and appointed Melanie Frazek, Esq., as the independent hearing officer.

8.      This action by Portland seeks judicial review of an administrative decision issued by a Maine Department of Education hearing officer, pursuant to 20 U.S.C. § 1415(i)(2), wherein the hearing officer erroneously concluded that the private school in Maine where the Parents unilaterally placed John is John's "stay put" placement from January 5, 2026 through the conclusion of the administrative proceedings.

9.      The hearing officer issued an administrative decision and order on February 24, 2026, and issued an amended decision and order on March 4, 2026. The facts of the orders were slightly different, but the relief ordered was identical.

10.     With regard to the above portions of the hearing officer's orders, Portland is a party "aggrieved by the findings and decision of a due process hearing officer" within the meaning of the IDEA, 20 U.S.C. § 1415(i)(2)(a).

11.     An administrative hearing officer's order granting maintenance of placement pursuant to the IDEA is immediately reviewable under the collateral order doctrine because it involves "an important issue which is independent from the merits of the student's ultimate placement, and a stay-put order is effectively unreviewable after final judgment." *Doe v. Portland Pub. Schs.*, 30 F. 4th 80, 90 (1st Cir. 2022).

12.     Venue in the United States District Court for the District of Maine is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the District of Maine, and the parties are located in the District of Maine.

FACTS COMMON TO ALL COUNTS

13.     John was a student at East End Community School in Portland ("East End School") starting in second grade, the 2021-2022 school year. He continued to attend public school for third grade at East End School, the 2022-2023 school year.

14.     John was eligible for special education when he entered Portland schools. The duration of his first Portland IEP was November 22, 2021 through November 18, 2022.  His second IEP, which spanned third grade and part of fourth grade, was dated November 29, 2022 through November 27, 2023. Both IEPs placed John at East End School.

15.     In August 2023, John's parents unilaterally decided to place John at Aucocisco School ("Aucocisco"), without Portland's approval.

16.     On or about January 29, 2024, the Parents filed a special education due process complaint against Portland with the Maine Department of Education alleging violations of John's IDEA right to a free appropriate public education ("FAPE") and seeking reimbursement for costs associated with Aucocisco and any compensatory services required to make up for alleged past IDEA violations (the "First Complaint").

17.     The Maine Department of Education captioned the administrative proceedings as *[Doe] v. Portland Public Schools*, Case No. 24.045H, and appointed Melanie Frazek, Esq., as the independent hearing officer.

18.     A due process hearing was originally scheduled to take place on March 7, 2024 but was rescheduled to April 23, 24 and 25 by agreement of the parties.

19.     The parties participated in mediation on March 4, 2024. Mediation was unsuccessful.

20.     On April 12, 2024, counsel for Portland sent counsel for the Parents a formal Offer of Settlement (the "Settlement Offer"). The Settlement Offer offered to reimburse the Parents for two school years of tuition at Aucocisco (2023-2024 and 2024-2025) in exchange for a release of past claims.

21.     The Parents accepted the offer that same day; counsel for the Parents wrote to the hearing officer that the acceptance "obviate[d] the need for a hearing on the merits."

22.     On April 15, 2024, the hearing officer entered an order closing the case and documenting the accepted terms of the offer (hereinafter, the "Settlement Order"). The hearing officer issued no findings of fact or conclusions of law.

23.     The Settlement Order did not address – let alone determine – the appropriateness of any particular educational program or placement (*i.e.*, Aucocisco versus East End School).

24.    On May 24, 2024, in compliance with acceptance of the Settlement Offer, the Parents executed a Release and Indemnification Agreement. The Parents released, *inter alia*, claims regarding reimbursement and compensatory education costs against Portland through August 30, 2024, agreed that the settlement was the compromise of a disputed claim regarding alleged past denials of FAPE, and that payment of tuition and settlement of the claim was not to be construed as an admission of liability by Portland.

25.    Portland in fact paid for John's tuition at Aucocisco for the 2023-2024 and 2024-2025 school years.

26.    Portland recorded John's enrollment at Aucocisco for the 2023-2024 and 2024-2025 school years in both Infinite Campus, a software platform Portland uses to manage student information, and Synergy, an online platform that the Maine Department of Education uses to track student enrollment data.

27.    As of June 18, 2025, John's enrollment was coded in Infinite Campus and Synergy as "not enrolled, eligible to return." After that time, Portland stopped recording John's school enrollment.

28.    On September 19, 2025, Ms. Doe sent Jesse Applegate, Senior Director of Special Education and Student Support, an invoice for John's tuition at Aucocisco for the entirety of the 2025-2026 school year, totaling $53,000. Ms. Doe did not ask for an IEP team meeting.

29.    On October 1, 2025, Portland suggested convening an IEP team meeting to discuss programming and services for John as well as updated educational evaluations. Portland convened an IEP team to discuss conducting updated evaluations. Because of the lack of availability of Aucocisco representatives, and at the request of the Parents, the meeting to design an IEP was not held until November 14, 2025.

5

30.     At the November 14, 2025 IEP team meeting, the team created a new IEP based on limited information about John's then-current functioning and performance at Aucocisco. The new IEP offered John a placement at an in-district placement, specifically, Lyman Moore Middle School. That IEP went into effect on November 24, 2025.

31.     On January 8, 2026, Portland received a copy of the Parents' due process hearing complaint, dated December 31, 2025 (the "Second Complaint").

32.     In the Second Complaint, the Parents sought an order "declaring the December [sic] 2025 IEP and placement offer to be inappropriate," an "IEP and continued placement" at Aucocisco, and "maintenance of his publicly-funded placement at Aucocisco during the pendency of these proceedings." The Parents asserted that Aucocisco was John's stay put placement pursuant to the Settlement Order.

33.     The Maine Department of Education captioned the administrative proceedings as *[Doe] v. Portland Public Schools*, Case No. 26.057H, and appointed Melanie Frazek, Esq., as the independent hearing officer.

34.     A due process hearing was originally scheduled to take place on February 24, 2026 but was rescheduled to April 13, 15 and 16 by agreement of the parties.

35.     On February 3, 2026, the Parents filed a Motion to Enforce Maintenance of Placement. They argued that, because the First Complaint requested reimbursement for their unilateral placement at Aucocisco and Portland agreed to fund that placement for two school years, the Settlement Offer and subsequent Settlement Order "reset" John's "stay put" placement to be his unilateral placement at Aucocisco.

36.    On February 10, 2026, Portland filed an opposition to the Parents' stay put motion, arguing that neither the Settlement Offer nor Settlement Order created an agreed-upon placement and that stay put does not apply here.

37.    On February 13, 2026, the Parents filed a reply in support of their stay put motion, arguing that, because Portland had conceded public funding to Aucocisco, and because there was no competing placement that could serve as stay put, Aucocisco was the only reasonable stay put placement.

38.    On February 20, 2026, the parties participated in oral argument on the stay put motion. That evening, Portland submitted a copy of the May 2024 release that was referenced in oral argument.

39.    The hearing officer issued an order on February 24, 2026. Her findings of fact included that the Settlement Order (1) did not constitute an agreement about placement; (2) expressly terminated tuition payment by Portland at the end of the 2024-2025 school year; and (3) did not imply that Aucocisco would remain John's placement after the 2024-2025 school year. She also found that the Parents came into the dispute with "unclean hands" and a "sense of disingenuousness" and noted that the issue of stay put appeared to be more about money than a dispute over John's programming.

40.    Even so, the February 24 order ultimately granted the Parents' stay put motion, specifically ordering stay put from January 5, 2026 "only through the duration of this Department of Education (DOE) administrative hearing at the DOE administrative level, and not beyond, to preclude Parents' gaming of the system for continued reimbursement of a placement which has at no time been determined on the merits to be the appropriate educational programming for [John]." The hearing officer further ordered that the Parents were not entitled to

7

tuition reimbursement at Aucocisco from the end of the regular 2024-2025 school year through January 4, 2026.

41.     The next day, February 25, 2026, Portland filed a Motion to Clarify to bring to the attention of the hearing officer a factual clarification that appeared to relate to a material premise in the February 24 order. The February 24 order stated that John's placement was "in limbo" following the November 10, 2025 IEP team meeting because the team had "recommended" placement within Portland Public Schools. However, Portland created an IEP on November 10, 2025, which became effective on November 24, 2025. Counsel for Portland clarified via email that the Parents did not agree to the placement created at the November 10, 2025 IEP team meeting.

42.     On March 4, 2026, the hearing officer issued an Amended Order (hereinafter the "Amended Order"), stating that her factual determinations "lean[ed] in favor of Portland regarding [John's] last educational placement no longer being Aucocisco, and therefore parents not being entitled to tuition reimbursement. . . ." Notwithstanding that finding, the hearing officer ordered the same relief as the February 24 order, with the exception being that the hearing officer amended the relief from granting "stay put" to granting "maintenance of placement" at Aucocisco.

43.     Portland has never agreed to place John at Aucocisco or implement his IEP at Aucocisco.

44.     Portland does not believe that Aucocisco's current educational programming is appropriate for John.

45.     Aucocisco has been invoicing Portland for John's attendance this school year, even though Aucocisco knows Portland has not placed him there. Aucocisco began submitting

8

invoices to Portland's business office in October 2025 and has continued to attempt to collect payment despite being told by Portland that it does not believe it is responsible for tuition.

46.     The Amended Order granting the Parents' motion to enforce is immediately reviewable under the collateral order doctrine.

## COUNT I
### (Judicial Review of Adverse Portions of Hearing Officer's Orders)

47.     Portland repeats and realleges each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

48.     Federal and state special education laws authorize the Court to conduct judicial review of the administrative decision and to "grant such relief as the court determines is appropriate." This authority includes the power to reverse or vacate some or all of the hearing officer's findings and remedial orders that were erroneous and/or violated the law.

49.     The hearing officer committed legal and factual error by finding that John's stay put placement is Aucocisco from January 5, 2026 through the conclusion of the administrative proceedings. This error allowed the hearing officer to order Portland to fund John's attendance at Aucocisco during the pendency of the administrative hearing.

50.     The hearing officer ruling should be enjoined to reflect that Portland is not required to maintain John's unilateral placement at Aucocisco during this action.

51.     Portland has fully exhausted all administrative remedies that might exist.

WHEREFORE, Portland Public Schools respectfully requests that the Court enter judgment in its favor and, specifically, award the following relief:

1.     Enter a temporary restraining order and preliminary injunction enjoining enforcement of the hearing officer's order;

2.     Determine that no operative stay put placement exists;

9

3.  Determine that Portland Public Schools is not required to fund John Doe's

    unilateral placement at Aucocisco School; and,

4.  Grant Portland such other relief as the Court may deem just and proper.


Dated: March 17, 2026                                    Respectfully submitted,


                                                    */s/ Rachel W. Sears*
                                                    Rachel W. Sears, Esq.
                                                    Jordan T. Quenneville, Esq.
                                                    Counsel for Portland Public Schools
                                                    Drummond Woodsum
                                                    84 Marginal Way, Suite 600
                                                    Portland, ME 04101
                                                    207-772-1941
                                                    *rsears@dwmlaw.com*
                                                    *jquenneville@dwmlaw.com*