UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PORTLAND PUBLIC SCHOOLS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00137-JAW |
| | ) | |
| MR AND MS DOE, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER ON MOTIONS FOR JUDGMENT ON ADMINISTRATIVE RECORD, PRELIMINARY INJUNCTION, AND MOTION TO PRESENT ADDITIONAL EVIDENCE**

School district brought action under the Individuals with Disabilities in Education Act (IDEA) challenging a hearing officer's determination that a student's stay-put placement was private school for the pendency of the administrative proceedings. The student's parents counterclaimed for judicial review of the administrative decision. Concluding the IDEA's stay-put provision does not apply to the student because he has no operative placement and a prior settlement offer did not constitute an agreement between the parties for purposes of the stay-put provision, the court enjoins the hearing officer's stay-put determination. Accordingly, the court also concludes the school district is not required to pay for the student's private school placement during the pendency of the administrative proceedings. Finally, the Court addresses miscellaneous relief sought—declining to strike factual findings from the hearing officer's order as the parents requested and mooting the motion(s) to supplement the record.

## I. BACKGROUND

### A. Procedural History

On March 17, 2026, Portland Public Schools (Portland) commenced an action under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.*, state special education laws, 20-A M.R.S. §§ 7000 *et seq.*, and the accompanying federal and state implementing regulations. *Compl.* (ECF No. 1). Pursuant to IDEA 20 U.S.C. § 1415(i)(2), Portland seeks judicial review of a Maine Department of Education (DOE) hearing officer's determination that the Maine private school where Mr. and Ms. Doe (Parents) "unilaterally placed" their son (John) would be his "stay put" placement during the pendency of the administrative proceedings. *Id.* at ¶ 8. On March 27, 2026, the Parents filed their answer and counterclaim. *Answer and Countercl.* (ECF No. 15) (*Defs.' Answer*) (*Defs.' Countercl.*). On March 30, 2026, Portland filed a reply. *Answer to Countercls.* (ECF No. 18) (*Pl.'s Answer*).

In addition to administrative review sought in the complaint, on March 17, 2025, Portland filed a motion seeking a preliminary injunction enjoining enforcement of the hearing officer's order and determining that Portland is not required to fund John's placement at the Maine private school. *Mot. for a TRO and Preliminary Inj.* (ECF No. 5) (*Pl.'s Mot. for PI*).[1] On March 27, 2025, the Parents filed their opposition. *Defs.' Obj. in Opp'n to Pl.'s Compl. and Mot. for Inj. Relief and in Support of their Countercl.* (ECF No. 16) (*Defs.'s Opp'n*).

[1] On March 19, 2026, Portland withdrew the request for a TRO and so this order addresses only the preliminary injunction. *Withdrawal of Mot. for TRO* (ECF No. 11).

On March 23, 2026, Portland filed a motion for the Court to set a hearing, *Pl.'s Req. for Oral Arg.* (ECF No. 13), which the Court granted. *Order* (ECF No. 14).

On May 5, 2026, Portland filed a motion to supplement the record. *Pl.'s Mot. to Permit Presentation of Addt'l Evid.* (ECF No. 20) (*Pl.'s Mot. to Suppl.*). On May 26, 2026, the Parents filed their opposition. *Defs.' Obj. to Pl.'s Mot. to Permit Presentation of Addt'l Evid.* (ECF No. 21) (*Defs.' Opp'n to Suppl.*). On June 2, 2026, Portland filed a reply. *Pl.'s Reply Regarding Mot. to Permit Presentation of Addt'l Evid* (ECF No. 25) (*Pl.'s Reply to Suppl.*).

On July 30, 2026, Portland requested the Court hold oral argument and resolve the pending motions given the upcoming school year. *Notice* (ECF No. 26). The Court held oral argument on August 28, 2026. *Min Entry* (ECF No. 30).[2]

**B. Statutory Background**

The IDEA provides federal funds to states that agree to implement specific policies and procedures designed to ensure children with qualifying disabilities can access a free appropriate public education (FAPE). *See* 20 U.S.C. § 1400(d) (declaring the purpose of the IDEA); *id.* § 1412(a) (describing state eligibility). The general prerequisite to the receipt of federal funds is the provision of a "free appropriate public education" in the "least restrictive educational environment" to all disabled children residing within the state. *Id.* §§ 1412(a)(1) & (5). By "free appropriate public

[2] At the commencement of the hearing counsel for Portland offered the Court updates on the ongoing administrative proceedings. In brief, the hearing officer's computer crashed and she lost her draft, so had recently—in mid-August 2026—emailed the parties with her intended findings and conclusions, but no such order yet exists. Further, the parties advised that they had an individualized educational program (IEP) meeting scheduled this afternoon. The Court has not considered these developments because they are in substantial flux.

education," Congress envisioned an education "that emphasizes special education and related services designed to meet the[ ] unique needs" of each child. *Id.* § 1400(d)(1). By "least restrictive educational environment," Congress sought to ensure that children with disabilities will be educated alongside non-disabled students "[t]o the maximum extent appropriate." *Id.* § 1412(a)(5)(A).

Pursuant to the IDEA, the unique needs of each child are to be set forth in an individualized educational program (IEP), developed by a team of individuals including the child's parents, the child's regular and special education teachers, a qualified representative of the local educational agency, and, where appropriate, the child. *Id.* § 1414(d). The IEP is a written statement that is developed, periodically reviewed (at least annually) and revised in accordance with specific procedures set forth in the IDEA. *Id.* § 1414(d)(3) & (4).

In the event that parents are dissatisfied with an agency's "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," *id.* § 1415(b)(6), parents and relevant IEP team members may engage in mediation, *id.* § 1415(e), or present their complaints in an "impartial due process hearing." *Id.* § 1415(f). In addition to providing parents the right to an administrative hearing, the IDEA also grants to any party "aggrieved by the findings and decision" of the hearing officer, the right to bring an IDEA "civil action" in either state court or the appropriate United States District Court. *Id.* § 1415(i)(2).

The IDEA also provides what is called a stay-put provision providing that while administrative and court proceedings are pending, a student must remain in his "then-current educational placement," unless his parents and the educational agency otherwise agree to place him elsewhere. *Id.* § 1415(j); 34 C.F.R. § 300.518(a).

### C. The Allegations in Portland's Complaint and Relief Sought

#### 1. The Parties

Portland is the municipal school unit responsible for education students who are residents of Portland, Maine. *Compl.* ¶ 2. Mr. and Ms. Doe are residents of Portland and the parents of John Doe, a twelve-year-old student who qualifies for special education under the category of autism. *Id.* ¶ 3.

#### 2. 2021-2022 and 2022-2023 School Years: Placement at East End School Under IEPs

John was a student at East End Community School in Portland (East End School) starting in second grade, the 2021-2022 school year and he continued to attend public school for third grade at East End School, the 2022-2023 school year. *Id.* ¶ 13. John was eligible for special education when he entered Portland schools. *Id.* ¶ 14. John's first Portland IEP, covering his second grade year, ran from November 22, 2021 through November 18, 2022 (First IEP). *Id.* ¶ 14. His second IEP, which spanned third grade and part of fourth grade, was dated November 29, 2022 through November 27, 2023 (Second IEP). *Id.* Both IEPs placed John at East End School. *Id.*

#### 3. 2023-2024 and 2024-2025 School Years: Placement at Aucocisco, First Due Process Complaint, and Settlement

In August 2023, the beginning of John's fourth grade year, John's parents unilaterally decided to place John at Aucocisco School (Aucocisco), without Portland's approval. *Id.* ¶ 15. On or about January 29, 2024, the Parents filed the first special education due process complaint against Portland with the Maine DOE alleging violations of John's IDEA right to a FAPE and seeking reimbursement for costs associated with Aucocisco and any compensatory services required to make up for alleged past IDEA violations (First Complaint). *Id.* ¶ 16. The Maine DOE appointed Melanie Frazek, Esq. as the independent hearing officer and the parties were set to appear before Officer Frazek between April 23 and 25, 2024. *Id.* ¶¶ 17-19. However on April 12, 2024, before the first special education due process hearing took place, counsel for Portland sent counsel for the Parents a formal Offer of Settlement (Settlement Offer), which offered to reimburse the Parents for two school years of tuition at Aucocisco (2023-2024 and 2024-2025) in exchange for a release of past claims. *Id.* ¶ 20.

The Parents accepted the offer that same day; counsel for the Parents wrote to the hearing officer that the acceptance "obviate[d] the need for a hearing on the merits." *Id.* ¶ 21. On April 15, 2024, Officer Frazek entered an order closing the case and documenting the accepted terms of the offer (Settlement Order) without issuing findings of fact or conclusions of law. *Id.* ¶ 22.

On May 24, 2024, in compliance with acceptance of the Settlement Offer, the Parents executed a Release and Indemnification Agreement. *Id.* ¶ 24. The Parents released, inter alia, claims regarding reimbursement and compensatory education

costs against Portland through August 30, 2024, agreed that the settlement was the compromise of a disputed claim regarding alleged past denials of FAPE, and that payment of tuition and settlement of the claim was not to be construed as an admission of liability by Portland. *Id.* Portland paid for John's tuition at Aucocisco for the 2023-2024 and 2024-2025 school years, John's fourth and fifth grade years. *Id.* ¶ 25.

Portland alleges it recorded John's enrollment at Aucocisco for the 2023-2024 and 2024- 2025 school years in both Infinite Campus, a software platform Portland uses to manage student information, and Synergy, an online platform that the Maine Department of Education uses to track student enrollment data. *Id.* ¶ 26.

**4. 2025-2026 School Year: New IEP**

As of June 18, 2025, John's enrollment was coded in Infinite Campus and Synergy as "not enrolled, eligible to return." *Id.* ¶ 27. After that time, Portland stopped recording John's school enrollment. *Id.*

On September 19, 2025, Ms. Doe sent Jesse Applegate, Senior Director of Special Education and Student Support, an invoice for John's tuition at Aucocisco for the entirety of the 2025-2026 school year, totaling $53,000. *Id.* ¶ 28. Ms. Doe did not ask for an IEP team meeting. *Id.* On October 1, 2025, Portland suggested convening an IEP team meeting to discuss programming and services for John as well as updated educational evaluations. *Id.* ¶ 29. Portland convened an IEP team to discuss conducting updated evaluations. *Id.* Because of the lack of availability of Aucocisco representatives, and at the request of the Parents, the meeting to design an IEP was

not held until November 14, 2025. *Id.* At the November 14, 2025 IEP team meeting, the team created a new IEP based on limited information about John's then-current functioning and performance at Aucocisco (New IEP). *Id.* ¶ 30. Portland alleges the New IEP offered John a placement at an in-district placement, specifically, Lyman Moore Middle School. *Id.* ¶ 30. The New IEP went into effect on November 24, 2025. *Id.*

**5. Second Special Education Due Process Complaint**

On or about December 31, 2025, the Parents filed a second special education due process complaint (Second Complaint) against Portland with the Maine DOE seeking an order: (1) declaring Portland's December 2025 Individualized Education Program (IEP) and placement offer to be inappropriate; (2) "an IEP and continued placement for [John] at Aucocisco School;" and, (3) "maintenance of [John's] publicly-funded placement at Aucocisco under 20 U.S.C. § 1415(j) during the pendency of these proceedings." *Compl.* ¶¶ 6-7, 32. The Maine DOE again appointed Melanie Frazek, Esq. as the independent hearing officer and Officer Frazek. *Id.* ¶ 33.

A due process hearing was originally scheduled to take place on February 24, 2026 but was rescheduled to April 13, 15 and 16 by agreement of the parties. *Id.* ¶ 34. On February 3, 2026, the Parents filed a Motion to Enforce Maintenance of Placement.[3] *Id.* ¶ 35. Portland alleges that in the Motion to Enforce Maintenance of

[3] Motion to Enforce Maintenance of Placement is also referred to as a stay-put motion and is based on the stay put provision of the IDEA. *Admin. R.* at 69-76 (containing the Parents' Motion to Enforce Maintenance of Placement); *see also* 20 U.S.C. § 1415(j) (stay-put provision); 34 C.F.R. § 300.518 (corresponding regulation).

Placement, the Parents argued that, because the First Complaint requested reimbursement for their unilateral placement at Aucocisco and Portland agreed to fund that placement for two school years, the Settlement Offer and subsequent Settlement Order "reset" John's "stay put" placement to be his unilateral placement at Aucocisco. *Id.*

On February 10, 2026, Portland filed an opposition to the Parents' Motion to Enforce Maintenance of Placement arguing that neither the Settlement Offer nor Settlement Order created an agreed-upon placement and that stay-put does not apply here. *Id.* ¶ 36. On February 13, 2026, the Parents filed a reply in support of their Motion to Enforce Maintenance of Placement in which—as Portland alleges—the Parents argued because Portland had conceded public funding to Aucocisco, and because there was no competing placement that could serve as stay-put, Aucocisco was the only reasonable stay-put placement. *Id.* ¶ 37. On February 20, 2026, the parties participated in oral argument on the Motion to Enforce Maintenance of Placement. *Id.* ¶ 38. That evening, Portland submitted a copy of the May 2024 release that was referenced in oral argument. *Id.*

On February 24, 2026, Officer Frazek issued an order on the Motion to Enforce Maintenance of Placement. *Id.* ¶¶ 9, 39-40. Portland alleges that Officer Frazek's findings of fact included that the Settlement Order (1) did not constitute an agreement about placement; (2) expressly terminated tuition payment by Portland at the end of the 2024-2025 school year; and (3) did not imply that Aucocisco would remain John's placement after the 2024-2025 school year. *Id.* ¶ 39. Portland further

alleges Officer Frazek also found the Parents came into the dispute with "unclean hands" and a "sense of disingenuousness" and noted the issue of stay-put appeared to be more about money than a dispute over John's programming. *Id.*

Portland alleges that, despite Officer Frazek's admonishments, the February 24, 2026 order ultimately granted the Parents' stay-put motion, specifically ordering stay-put from January 5, 2026 "only through the duration of this Department of Education (DOE) administrative hearing at the DOE administrative level, and not beyond, to preclude Parents' gaming of the system for continued reimbursement of a placement which has at no time been determined on the merits to be the appropriate educational programming for [John]." *Id.* ¶ 40. The hearing officer further ordered that the Parents were not entitled to tuition reimbursement at Aucocisco from the end of the regular 2024-2025 school year through January 4, 2026. *Id.*

The next day, February 25, 2026, Portland filed a Motion to Clarify. *Id.* ¶ 41. Portland alleges that the motion sought to bring to the attention Officer Frazek a factual clarification that appeared to relate to a material premise in the February 24, 2026 order. *Id*. The February 24, 2026 order stated that John's placement was "in limbo" following the November 10, 2025 IEP team meeting because the team had "recommended" placement within Portland Public Schools. *Id.* However, Portland alleges it created an IEP on November 10, 2025, which became effective on November 24, 2025. *Id.* Counsel for Portland clarified via email that the Parents did not agree to the placement created at the November 10, 2025 IEP team meeting.

On March 4, 2026, Officer Frazek issued an amended order on the Parents' Motion to Enforce Maintenance of Placement (Amended Order) in light of Portland's Motion to Clarify. *Id.* ¶¶ 9, 42. Portland alleges the facts of the orders were slightly different, but the relief ordered was identical. *Id.* ¶ 9.

In the March 4, 2026 Amended Order, Officer Frazek stated that her factual determinations "lean[ed] in favor of Portland regarding [John's] last educational placement no longer being Aucocisco, and therefore parents not being entitled to tuition reimbursement . . . ." *Id.* ¶ 42. Portland alleges that notwithstanding that finding, the Officer Frazek ordered the same relief as the February 24, 2026 order, except Officer Frazek amended the relief from granting "stay put" to granting "maintenance of placement" at Aucocisco. *Id.* ¶ 42.

Portland alleges it has never agreed to place John at Aucocisco or implement his IEP at Aucocisco, nor does it believe that Aucocisco's current educational programming is appropriate for John. *Id.* ¶¶ 43-44. Portland alleges Aucocisco has been invoicing Portland for John's attendance this school year, even though Aucocisco knows Portland has not placed him there. *Id.* ¶ 45. The school further claims Aucocisco began submitting invoices to Portland's business office in October 2025 and has continued to attempt to collect payment despite being told by Portland that it does not believe it is responsible for tuition. *Id.* Portland states the Amended Order granting the Parents' motion to enforce is immediately reviewable under the collateral order doctrine. *Id.* ¶ 46.

**6. Portland's Request for Administrative Review**

In their complaint Portland seeks judicial review of adverse portions of the Officer Frazek's orders under federal and state special education laws authorizing Federal Courts to conduct judicial review and grant appropriate relief, including reversing or vacating all or portions of Officer Frazek's findings and remedial orders. *Id.* ¶¶ 47-48. Portland maintains that the Officer Frazek "committed legal and factual error by finding that John's stay-put placement is Aucocisco from January 5, 2026 through the conclusion of the administrative proceedings." *Id.* ¶ 49. Portland maintains "[t]his error allowed [Officer Frazek] to order Portland to fund John's attendance at Aucocisco during the pendency of the administrative hearing." *Id.* Portland asks the Court to enjoin Officer Frazek's ruling to reflect that Portland is not required to maintain John's unilateral placement at Aucocisco during this action. *Id.* ¶ 50. Portland specifically asks the Court (1) enter an injunction enjoining enforcement of the Hearing Officer's order; (2) to determine that no operative stay-put placement exists, (3) determine that Portland Public Schools is not required to fund John's unilateral placement at Aucocisco, and (4) any other relief. *Id.* ¶ 51.

### D. The Allegations in the Parents Counterclaim and Relief Sought

#### 1. The Parents' Factual Allegations

The Parents claim they and their son are residents of Portland and Portland Public Schools is the agency responsible for the education of Portland residents. *Defs.' Countercl.* ¶¶ 1-2.

The Parents allege John attended the Aucocisco School, a private special purpose school in Freeport, for fourth grade (2023-2024) and fifth grade (2024-2025), with his tuition funded by Portland pursuant to his parents' acceptance of Portland's

formal "offer of judgment/settlement" dated April 12, 2024, later documented in an order from the Maine DOE hearing officer dated April 15, 2024. *Id.* ¶ 4.

They assert Portland violated the IDEA by failing to propose an IEP and placement for John for his sixth grade year (2025-2026). *Id.* ¶ 5. The Parents claim that they therefore continued his placement at the Aucocisco School for sixth grade. *Id.* According to the Parents, Portland belatedly proposed an IEP and public school placement for John in November 2025. *Id.* ¶ 6. The Parents did not consent to this proposal because it was inappropriate for John. *Id.* Instead, they filed a due process complaint against Portland with the Maine Department of Education, dated December 31, 2025. *Id.*

In accordance with a scheduling order issued by the hearing officer appointed by the Maine Department of Education, the Parents filed a Motion to Enforce Maintenance of Placement on February 3, 2026. *Id.* ¶ 7. Following briefing, oral argument, and a motion to clarify, the Hearing Officer issued her final order on the Parents Motion to Enforce Maintenance of Placement on March 4, 2026. *Id.* ¶ 8.

Although the Parents state their motion called only for a determination of John's "then-current placement," as required by the IDEA—and the Hearing Officer resolved this issue in the Parents' favor by concluding that John's placement at the Aucocisco School is his then-current placement under section 1415(j)—her order contains extraneous and erroneous findings of fact. *Id.* ¶ 9. The Parents claim the Hearing Officer's erroneous findings include statements that "Parents appear to come

into this stay-put dispute with unclean hands" and acted "[w]ith a sense of disingenuousness." *Id.*

The Parents claim the Hearing Officer's order also includes extraneous, erroneous, and/or unsupportable conclusions of law. These erroneous conclusions include that Portland's stay-put obligation does not encompass tuition owed to Aucocisco for the period prior to the filing of the due process complaint and that Portland's stay-put obligation exists only through the pendency of the administrative proceedings "and not beyond," which is contrary to law. *Id.* ¶ 10.

### 2. The Parents' Counterclaim

The Parents counterclaim seeks judicial review of adverse portions of the Hearing Officer's order on maintenance of placement. *Defs.' Answer and Countercl.* at 7-9. The Parents ask the Court to enter an order (1) affirming the administrative determination that John Doe's then-current placement is Aucocisco School; (2) overruling the portions of the administrative order including "the unlawful limitation of stay-put relief to only the administrative proceedings" as well as the comments about unclean hands and disingenuousness (3) award them full attorney's fees, costs, and litigation expenses; and (4) any other relief.

## II. THE PARTIES' POSITIONS

### A. Portland's Motion for a Preliminary Injunction

Portland seeks a preliminary injunction (1) enjoining the Hearing Officer's order, (2) determining no stay-put placement exists, and (3) concluding that Portland is not required to fund John's unilateral placement at Aucocisco. *Pl.'s Mot. for PI* at 15. Portland argues a preliminary injunction is warranted because it demonstrated

a likelihood of success on the merits, *id.* at 7-13, irreparable injury favors Portland, *id.* at 13-14, and so do the balancing of hardships and public interest. *Id.* at 14-15. As for the substance of the argument on the merits, Portland makes three points. First, the last agreed upon placement is not operative or relevant because it was set forth in John's November 29, 2022 to November 27, 2023 IEP and placed him at a public school. *Id.* at 7-8. Second, the Settlement Offer is not an agreement to place John at Aucocisco. *Id.* 9-11. Third, the Hearing Officer's settlement order does not constitute an agreement to place John at Aucocisco. *Id.* at 11-13.

### B. The Parents's Opposition to a Preliminary Injunction

The Parents counter that a stay-put placement is a mandatory provision that obliges Portland to maintain the status quo during the pendency of administrative proceedings. *Defs.' Opp'n* at 5-6. The Parents argue Portland ignores the impact of the formal offer of judgment/settlement when Portland asserts the last valid agreed-upon placement was for John's third grade year at a public elementary school. *Id.* at 10. The Parents ask the Court to deny Portland's request for injunctive relief, strike Officer Frazek's determination limiting Portland's obligation to pay John's Aucocisco tuition only for the pendency of IDEA proceedings, strike the "unclean hands" language, and confirm Portland's obligation to maintain John's placement at Aucocisco. *Id.* at 14-17.

### C. Portland's Motion to Supplement the Record

Portland moves the Court, pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii), to permit presentation of additional evidence in connection with its request for judicial review of Officer Frazek's order partially granting the Parents' Motion for Maintenance of

Placement. *Pl.'s Mot. to Suppl.* at 1. The additional evidence is an affidavit from Mr. Applegate and an email which Portland claims demonstrates the Parents did not think Portland had an ongoing obligation to pay for Aucocisco and which Portland maintains directly contradicts the argument the Parents put before Officer Frazek and make in their opposition. *Id.*at 3 (citing *Def.' Opp'n* at 12).

**D. The Parent's Opposition to Portland's Motion to Supplement**

The Parents oppose Portland's motion as untimely, but if the Court permits additional evidence, they alternatively ask to present evidence of the billing history between Portland and Aucocisco School demonstrating Aucocisco billed Portland directly for the 2024-2025 school year at the state-approved rate for students placed by public school districts in private schools, which the Parents claim is "as if [Portland] had placed John Does at Aucocisco for the year. *Defs.' Opp'n to Suppl.* at 1, 4. The Parents claim both the Applegate affidavit and the email are inadmissible hearsay and, additionally, that the email has no bearing on the legality of the stay-put placement. *Id.* at 3.

**E. Portland's Reply**

Portland argues the Parents conditional proposal of additional rejoinder evidence—direct tuition payments from Portland to Aucocisco—are procedurally deficient as the Parents have not moved the Court to admit their proposed evidence. *Pl.'s Reply to Suppl.* at 1. Regardless, Portland claims the proposed evidence of direct payments supports Portland's argument that the Parents understood that Portland had not agreed to place John at Aucocisco and the past direct payments have no

bearing on the 2025-2026 school year. *Id.* Portland asserts plainly: [p]ayment of tuition pursuant to a settlement agreement is not placement." *Id.*at 2.

## III. LEGAL STANDARD

"District courts considering challenges to administrative IDEA decisions apply an intermediate standard of review." *Johnson v. Bos. Pub. Sch.*, 906 F.3d 182, 190-91 (1st Cir. 2018). With this standard, the court is expected to make "an independent ruling based on the preponderance of the evidence," while also giving "due weight to the hearing officer's findings." *Id.*

The IDEA directs that a court reviewing state educational proceedings "receive the records of the administrative proceedings[,] hear additional evidence at the request of a party[,] and[,] bas[e] its decision on the preponderance of the evidence, . . . grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Supplementation of the administrative record is allowed more freely in IDEA cases than in typical cases involving judicial review of administrative proceedings. *See Johnson*, 906 F.3d at 190-191.

"In the event that the court disagrees with the administrative decision maker, the court can fashion appropriate relief on its own; but if the process of determining the appropriate relief depends on more nuanced judgments, educational expertise, or other factors that are not readily susceptible to resolution based on the paper record or the parties' entreaties to provide supplemental offerings, then vacatur of the administrative decision, in whole or in part, and remand for further proceedings is appropriate." *K.C. for M.D. v. Reg'l Sch. Unit 73*, 616 F. Supp. 3d 63, 69 (D. Me. 2022) (citing *Mr. & Mrs. C v. Me Sch. Admin. Dist. No. 6*, No. 2:06-cv-198-DBH, 2007 U.S.

Dist. LEXIS 87900, at *103 (D. Me. Nov. 28, 2007), *R. & R. adopted sub nom*, *C. v. Me. Sch. Admin. Dist. No. 6*, 538 F. Supp. 2d 298 (D. Me. 2008) (collecting cases)).

## IV. DISCUSSION

The Court holds the Parents have failed to show entitlement to stay-put injunction and therefore enjoins the Hearing Officer's Amended Order. The Court further orders that Portland is not responsible for John's tuition at Aucocisco at any point after the conclusion of the regular 2024-2025 school year, when Portland's payments pursuant to the Settlement Order concluded. The Court addresses miscellaneous relief sought—declining to strike factual findings from the Hearing Officer's Amended Order and mooting the motion(s) to supplement the record. Finally, the Court makes plain the limits of its order.

### A. Cross Motions for Administrative Review on Stay-Put

First the Court determines that IDEA's stay-put provision does not apply to John because he has no operative placement and the prior Settlement Offer does not constitute an agreement between the parties for purposes of the stay-put provision. Next, the Court concludes that Portland is not required to pay for John's placement at Aucocisco.

#### 1. The IDEA's Stay-Put Provision Does Not Apply to John

The central questions before the Court are whether the IDEA's stay-put provision applies to John and, if so, if the Settlement Offer and Settlement Order explicitly or implicitly updated John's stay-put placement.

##### a. No Placement

As discussed, the IDEA's stay-put provision safeguards a student's right to remain in his "then-current educational placement" during the pendency of administrative and court proceedings related to alleged IDEA violations. *See* 20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518(a). Although the stay-put provision generally operates as an "automatic preliminary injunction," *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982), the Parents must demonstrate that Aucocisco is John's current educational placement. *See Leonard v. McKenzie*, 869 F.2d 1558, 1564 n.5 (D.C. Cir. 1989) (stating the "unequivocal" nature of the stay-put provision is irrelevant absent a showing that the desired placement is the current educational placement).

The IDEA does not define the term "current educational placement." Although its meaning is easy to discern when there is an agreed upon IEP in place, it becomes more difficult in other scenarios. *See Johnson v. District of Columbia*, 839 F. Supp. 2d 173, 178 (D.D.C. 2012) (concluding the then-current educational placement for purposes of the stay-put provision was the last agreed upon IEP). In other formulations, "[t]o determine a child's 'then-current educational placement,' a court typically looks to: (1) 'the placement described in the child's most recently implemented IEP'; (2) 'the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked'; or (3) 'the placement at the time of the previously implemented IEP.'" *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (quoting *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004)). In other words, courts have articulated

(1) a current/last agreed upon IEP formulation, (2) a recently implemented IEP formulation, (3) an operative placement formulation, and (4) a previously implemented formulation.

As Portland states, the last agreed upon IEP was the IEP in effect between November 29, 2022 and November 27, 2023 that placed John in public school for his third grade year. *Pl.'s Mot. for PI* at 8; *see also Admin. R.* at 1-14 (Second IEP and listing duration as November 29, 2022 through November 27, 2023) (ECF No. 6); *id.* at 60 (in the Second Complaint the Parents note John's "IEP expired on November 27, 2023"). Portland, however, argues there is no operative placement for purposes of the IDEA's stay-put provision. John stopped accessing the most-recently-agreed-upon IEP nearly three years ago when the Parents unilaterally placed him at Aucocisco. *Pl.'s Mot. for PI* at 8.[4]

The Court agrees and concludes the IDEA's stay-put provision does not apply to John because he has no placement. Keying in on the term "placement," the *Mackey* Court relies on a Third Circuit opinion, *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859 (3d Cir.1996), which itself relies on the now-distinguished reasoning of a Sixth Circuit opinion. *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618 (6th Cir. 1990). Beginning at the source, in *Thomas*, the student's IEP had not yet been implemented at the time the dispute arose. 918 F.2d at 621-622. The parent argued that the IEP agreed to by

4 The administrative record contains another IEP, dated April 1, 2024 though March 31, 2025 (Third IEP) and placing John at Lyman Moore Middle school for fifth grade. *Admin R.* at 28-42. However, the Third IEP never went into effect because, pursuant to the Settlement Order entered on April, 15 2024, Portland agreed to pay for John to attend Aucocisco for his fifth grade year—2024-2025. *Id.* 47.

the school district constituted the current placement, while the school district contended that the actual services the student had been receiving at the time of the dispute constituted the current placement. *Id.* at 625. Noting that Congress had not defined the term "placement" and, specifically, had not referenced the term "IEP" in the stay-put provision, the Sixth Circuit ascribed "placement" with its plain meaning: "the operative placement under which the child is actually receiving instruction at the time the dispute arises." *Id.* at 626. Accordingly, the *Thomas* court found for the district since the services the student was actually receiving at the time were provided under a pre-IEP home-based services agreement. *Id.*

The problem with the *Thomas* formulation of "placement" is that Department of Education has defined "placement" in its regulations since *Thomas* was decided. *See* 34 C.F.R. § 300.116. Section a of that regulation provides "[t]he placement decision . . . [i]s made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options." *Id.* § 300.116(a)(1). Section b provides the "placement . . . [i]s determined at least annually; . . . based on the child's IEP; and . . . [i]s as close as possible to the child's home[.]" *Id.* § 300.116(b)(1)-(3).

There is no placement here. As the Sixth Circuit explained, "[u]nder this definition of 'placement,' which requires the school district to approve of the educational setting at some point, [Aucocisco] does not qualify as [John's] 'current educational placement.'" *N.W. ex rel. J.W. v. Boone Cnty. Bd. of Educ.*, 763 F.3d 611, 617 (6th Cir. 2014). Further, just like the district in *N.W.*, Portland never agreed to

John attending Aucocisco in an IEP. *Id.*; *Admin R.* at 1-14 (Second IEP placing John at East End Community School for third grade); *id.*, at 28-42 (Third IEP placing John at Lyman Moore Middle for fifth grade); *see also Compl.* ¶ 43 ("Portland has never agreed to place John at Aucocisco or implement his IEP at Aucocisco"); *Pl.'s Mot. for PI* at 1, 5, 14 (stating the same). Thus, while *Mackey* provides a formulation—namely operative placement formulation—of the undefined "current educational placement," the Court concludes there is no placement and so that formulation does not apply to John.

The Parents, on the other hand, argue Portland "ignore[s] the impact of the formal offer of judgment/settlement." *Defs.'s Opp'n* at 10. By virtue of this agreement between the Parents and Portland, John's placement at Aucocisco became his "then current (i.e., "last agreed upon") placement" under the IDEA. *Id.* at 10-11. In other words, the Parents claim that even though neither the Settlement Offer nor Settlement Order used the magic words "then-current placement," the parties agreed to place John at Aucocisco. Indeed, at oral argument, counsel for the Parents urged the Court to infer from the totality of the Settlement Order that Officer Frazek determined that John's current placement was Aucocisco.

Not so. The Settlement Order declares "[t]he hearing officer, being apprised of the parties' offer and acceptance of an agreement to settle the above-captioned case, does hereby specify the terms of the agreement" and then lists six affirmative obligations on Portland in exchange for a seventh item, which is a release by the Parents:

(1) Portland Public Schools (District) will reimburse [the Parents] for appropriately documented tuition costs for obtaining **parentally placed** educational services for their son . . . during the 2023-2024 school year . . . ;

(2) The District will reimburse the Parents for appropriately documented mileage they incurred in transporting [John] . . . to the Aucocisco School . . . ;

(3) The District shall reimburse the Parents [for a summer program] . . . ;

(4) The District shall reimburse the Parents [for social emotional programming] . . . ;

(5) The District shall reimburse the Parents for . . . tuition costs they may incur for [John's] continued attendance at Aucocisco School for the regular 2024-2025 school year;

(6) The District shall reimburse the Parents for . . . attorney's fees . . . ; and

(7) The Parents agree to provide a full release of all claims up through the start of the 2024-2025 regular school year.

*Admin. R.* at 47 (emphasis supplied). The parties agreed to no more than the specified financial reimbursements in exchange for the release of all claims up through the start of the 2024-2025 school year. *See also Admin. R.* at 48-49 (Release and Indemnification Agreement releasing, inter alia, claims related to "free appropriate public education in the least restrictive environment" and to "reimbursement and compensatory education costs"). Portland did not agree to "place" John at Aucocisco and, contrary to the regulations on placement, there was no reference to proximity to John's home, and IEP, evaluation data, or placement options. 34 C.F.R. § 300.116(a)(b).

If anything, the Settlement Order reflects the Parents' unilateral placement of John at Aucocisco. *Admin. R.* at 47 ("Portland Public Schools (District) will reimburse [the Parents] for appropriately documented tuition costs for obtaining **parentally placed** educational services for their son . . . during the 2023-2024 school year") (emphasis supplied). At oral argument, counsel for the Parents agreed that at least the first paragraph of the Settlement Order indicates that John was "parentally placed" at Aucocisco for the 2023 through 2024 school year. The Parents' position is that the Settlement says nothing about the limit of this placement and thus it remains John's current placement. Further, the Parents' counsel argued the fifth paragraph—additionally memorializing Portland's obligation for John's "continued attendance at Aucocisco School for the regular 2024-2025 school year"—suggests that Officer Frazek concluded that Aucocisco was John's ongoing and thus current placement.

The Court appreciates the Parents' position but has a different reading of the Settlement Order. First, the term "continued attendance" is not identical or even equivalent to "current placement" or "stay-put placement" under the IDEA's stay-put provision. Second, rather than reading the fifth paragraph as a separate conclusion, the Court reads the order as a whole. Indeed, "the whole of an integrated agreement ordinarily should be considered in order to determine the meaning of any individual part." *Blackie v. State of Me.*, 75 F.3d 716, 722 (1st Cir. 1996). The Settlement Order acknowledged that the Parents, rather than Portland, placed John at Aucocisco, and that Portland would reimburse the Parents for the 2023-2024 school year, summer

2023 and 2024 programming, and for the 2024-2025 school year. The phase "continued attendance" in the fifth paragraph only suggests that as of the date of the Settlement Order—April 15, 2024—there was an understanding that John would attend the same school in the future, for the 2024-2025 school year.

Third, the Settlement Order is dissimilar to any of the formulations courts have engaged to determine a student's "then-current educational placement" under the IDEA. *See* 20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518(a). Those formulations are (1) a current/last agreed upon IEP formulation, (2) a recently implemented IEP formulation, (3) an operative placement formulation, and (4) a previously implemented formulation. Under these formulations, private school placement results from a deliberative process in which the parties agree that to provide a FAPE, a private placement is necessary. Nothing in the Settlement Order suggests this process was undertaken to arrive at the settlement.

In three of these formulations, "a child's 'IEP Team'—a group of school officials, teachers, and parents—" craft an IEP that "spells out a personalized plan to meet all of the child's 'educational needs'" and "documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how she can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that she can 'advance appropriately toward [those] goals.'" *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158-159 (2017) (first citing 20 U.S.C. §§ 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B)) (then citing *id.* §§ 1414(d)(1)(A)(i)(I), (II),

(IV)(aa)). The Settlement Order contains none of these statutory requirements or relevant findings.[5]

In the operative placement formulation, the applicable regulations "require[ ] the school district to approve of the educational setting at some point." *N.W.*, 763 F.3d at 617 (discussing 34 C.F.R. § 300.116 (defining placement)). Of course, as is discussed more below, that "agreement" can be rhetorical, as courts construe a favorable due process decision upholding private school placement as an agreement. 34 C.F.R. § 300.518(d). ("If the hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of" the stay-put provision). At bottom, the Settlement Order does not engage any of the processes required to establish a stay-put placement.

**b. No Agreement**

In addition to finding there is no placement, the Court also concludes there is no agreement that would qualify for the stay-put provision. Recall that the stay-put provision additionally recognizes that the parties can "agree otherwise" for the purposes of the stay-put provision. 20 U.S.C. § 1415(j) (a student must remain in his "then-current educational placement" unless his parents and the educational agency otherwise agree to place him elsewhere"); 34 C.F.R. § 300.518(a) (same). The Parents

[5] Under First Circuit law, "a hearing officer's decision that [the] parents' unilateral change of placement is appropriate can constitute 'agreement' between the state and parents for purposes of the stay-put provision." *Doe*, 30 F.4th at 91. But by approving the settlement agreement in this case, the Hearing Officer did not decide that the change was appropriate and the Settlement Order does not transform the parties' agreement into a placement that is entitled to a stay-put order.

argue "that section 1415(j) and its implementing federal regulation, 34 C.F.R. § 300.518, mandate stay-put protection for a private school placement established through due process proceedings seeking reimbursement." *Defs.' Opp'n* at 7.

Section 300.518(d) provides: "If the hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of" the stay-put provision. 34 C.F.R. § 300.518(d). According to the Parents, had they "litigated and won reimbursement in 2024—by establishing that John had been denied an appropriate education and had been unilaterally placed in an appropriate private school—then stay-put rights undoubtedly would have attached to his Aucocisco placement by virtue of the parent-state agreement described in section." *Defs.' Opp'n* at 9.

Indeed, the First Circuit has recognized "[a]n administrative decision in favor of a unilateral change of placement to private school by parents can constitute 'agreement' by the state to that placement for purposes of the stay-put provision." *Doe v. Portland Pub. Schs.*, 30 F.4th 85, 89 (1st Cir. 2022) (first citing *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985)) (then citing 34 C.F.R. § 300.518(d)). However, the Parents did not litigate and Officer Frazek did not issue an opinion agreeing with the Parents for purposes of section 300.518(d). Instead, the parties entered a Settlement Agreement, *Admin. R.* at 43-46 (email correspondence to Officer Frazek informing her of the Settlement Agreement), and Officer Frazek never

determined that placement at Aucocisco was appropriate. *See generally Admin. R.* at 47 (Settlement Order).

In *Doe*, the hearing officer determined the parents' actions—including the decision to place the student at private school (Aucocisco in this instance as well)—taken between May 2019 and December 2020 should be reimbursed because they were taken to remedy education deficits caused by Portland's denial of a FAPE to the student from December 2017 to November 2019. *Doe*, 30 F.4th at 91. However, in the same decision, the hearing officer addressed a separate issue and expressly found that Portland's January 2020 IEP provided a FAPE under the IDEA and thus the hearing officer expressly did not order ongoing placement at Aucocisco as of the time that she approved the January 2020 IEP. *Id.*

As the First Circuit explained in *Doe*, the hearing officer "did not find that continuing unilateral placement by the parents at Aucocisco 'is appropriate' so as to constitute agreement." *Id.* at 92 (footnote omitted). Further "[t]he regulation speaks of a present change of placement, not a remedial order expressly limited to a fixed period in the past." *Doe*, 30 F.4th at 92 (footnote omitted). The Court applies the same reasoning here. Officer Frazek's Settlement Order makes no finding on the appropriateness of any placement—instead, the Settlement Order is remedial, expressly limited to "a full release of all claims up through the start of the 2024-2025 regular school year." *Admin. R.* at 47; *see also id.* at 48-49 (Release and Indemnification Agreement stating "this settlement is a compromise" and "payment and settlement of the claim is not to be construed as an admission of liability").

At oral argument, counsel for the Parents highlighted that the Settlement Order gave the Parents the precise relief they sought from the Hearing Officer—reimbursement and public funding.[6] Thus the Parents insist that John's placement is necessarily at Auocisco because they got the same relief they would have been given had they prevailed on their due process claim. The flaw in this reasoning is that a Settlement Offer is necessarily not a stay-put agreement because it is a compromise. By entering the Settlement Agreement, the Parents chose to forego an express determination by a hearing officer "agree[ing] with the child's parents that a change of placement is appropriate" which is "treated as an agreement between the State and the parents for purposes of" the stay-put provision. 34 C.F.R. § 300.518(d). Concluding that neither the "placement" nor the "agreement" aspect of the stay-put provision applies to John, the Court grants Portland's motion for judicial review insofar as it seeks an order determining that no operative stay-put placement exists. "While it is rare to find that a plaintiff has failed to show entitlement to a stay put injunction, this is a rare case." *J.L. through S.L. v. Williamson Cnty., Tennessee, Bd. of Educ.*, No. 23-5704, 2024 U.S. App. LEXIS 19406, at *23 (6th Cir. Aug. 2, 2024). The Court denies the Parents counterclaim seeking an order affirming that Aucocisco is John's then-current placement. The Court further grants Portland's motion for a preliminary injunction insofar as it seeks a Court order determining no operative stay put placement exists.

**2. Portland is not required to pay for John's placement at Aucocisco**

[6] The Parents also make this argument in their opposition. *Def.'s Opp'n* at 10-11.

Officer Frazek's Amended Order on maintenance of placement concluded:

> The above considerations lean in favor of Portland regarding Student's last educational placement no longer being Aucocisco, as well as Parents not being entitled to tuition reimbursement. Moreover, an IEP Team meeting on November 14, 2025 (this current school year) developed an IEP for educational programming and placement within Portland Public Schools. Parents again objected to the Team's plan and placement.
>
> Due to the unique circumstances of this case, and for the limited purpose of the due process hearing exclusively, the Hearing Officer grants *Parents' Motion to Enforce Maintenance of Placement* with the following limitations:
>
> 1. Maintenance of placement at Aucocisco is granted from the date of January 5, 2026, the date Parents filed their due process hearing request.
>
> 2. Parents are not entitled to tuition reimbursement for Student's attendance at Aucocisco from the end of the regular 2024-2025 school year through January 4, 2026.
>
> 3. This Order maintains Student's placement at Aucocisco only through the duration of this Department of Education (DOE) administrative hearing at the DOE administrative level, and not beyond, to preclude Parents' apparent gamin of the system for continued reimbursement of a private placement which has at no time been determined on the merits to be the appropriate educational programming for Student.

*Admin. R.* at 92. Thus, under the terms of the Amended Order, Portland does not have to pay John's Aucocisco tuition for the beginning of sixth grade—the period between when the Settlement Offer expired, *Admin. R.* at 47 (extending funding only though the end of the 2024-2025 regular school year), though January 4, 2026. However, because Officer Frazek concluded Aucocisco is the maintenance of placement location, both parties take this to mean Portland must pay for John's tuition at Aucocisco from January 5, 2026 and through the duration of the

administrative proceedings. *Pl.'s Mot. for PI* at 9-10; *Defs.' Opp'n* at 8-9. The Court addresses these payment provisions in turn.

**a. The Court Partially Affirms the Hearing Officer—Portland Is Not Responsible for John's Aucocisco Tuition for the Beginning of Sixth Grade**

The Parents claim Officer Frazek erroneously concluded Portland's obligation does not encompass tuition owed to Aucocisco for the period prior to the filing of the due process complaint. *Defs.' Opp'n* at 8-9. The Parents also claim Portland had an obligation to provide John an IEP but failed to satisfy its obligation to propose a sixth grade IEP and placement. *Id.* at 3. The Court disagrees and affirms Officer Frazek's Amended Order insofar as it held Portland is not responsible for John's Aucocisco tuition for the beginning of sixth grade—the period between when the Settlement Offer expired at the end of the 2024-2025 regular school year though January 4, 2026. The Court additionally concludes that Portland did not owe John an IEP at the start of the sixth grade school year.

As discussed, there was no active IEP during the beginning of John's sixth grade year. The most recent IEP in the record provided to the Court ran from April 1, 2024 through March 31, 2025 and placed John at Lyman Moore Middle for fifth grade. *Admin. R.* 28-42 (Third IEP). However, the Third IEP was never implemented because John attended Aucocisco for fifth grade and his tuition through that regular school year was paid for by Portland, pursuant to the Settlement Order. *Id.* at 47.

When John began his sixth grade year, Portland did not owe him an IEP. As explained by the Ninth Circuit: "Here's why[:]"

> Section 1412(a)(10) governs the provision of services for children in private school, and it has three subparagraphs. The first is entitled "[c]hildren enrolled in private schools by their parents," and provides (among other things not relevant here) that such children need not be given IEPs. 20 U.S.C. § 1412(a)(10)(A). The second is entitled "[c]hildren placed in, or referred to, private schools by public agencies," and requires IEPs. § 1412(a)(10)(B).[7] And the third is entitled "[p]ayment for education of children enrolled in private schools without consent of or referral by the public agency." § 1412(a)(10)(C). This subparagraph states that reimbursement is not required if the district offered the child a FAPE but may be required if the district did not offer a FAPE. *Id.*

*Capistrano Unified Sch. Dist. v. S.W.*, 21 F.4th 1125, 1138 (9th Cir. 2021) (footnote original at 1138 n.5). Effectively, these sections establish two categories of private school students—parentally placed private school students and publicly placed private school students. *Id.* The third subparagraph "falls entirely within the first category of students placed in private school by their parents" which it why it begins with "[s]ubject to subparagraph (A)." 20 U.S.C. § 1412(a)(10)(C).

While parents who unilaterally place a child in private school may seek reimbursement for the costs of special education and related services, "courts may grant reimbursement under § 1415(i)(2)(C)(iii) only when a school district fails to provide a FAPE *and* the private-school placement is appropriate." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 242 n.9 (2009). The IDEA specifies that reimbursement is permitted "for the cost of [private school] enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)).

---

[7] When districts know that they cannot adequately serve a child with disabilities, sometimes they place the child into a private school that can provide more services.

That section was added by amendment in 1997 and elucidates the general authority to grant appropriate relief in 20 U.S.C. § 1415(i)(2)(C)(iii). *Forest Grove*, 557 at 239, 242. Here, we have no order by any hearing officer that the school district failed to provide a FAPE or that Aucocisco is appropriate.

Because the Settlement Offer contained no official finding that Portland failed to provide a FAPE, John remained parentally placed at Aucocisco, notwithstanding the Settlement Order directing Portland to pay. *Admin. R.* at 47 ("Portland Public Schools (District) will reimburse [the Parents] for appropriately documented tuition costs for obtaining **parentally placed** educational services for their son . . . during the 2023-2024 school year") (emphasis supplied). Accordingly, when the sixth grade school year began, Portland did not owe John an updated IEP. *S.W.*, 21 F.4th at 1138 (holding "if the student has been enrolled in private school by her parents, then the district need not prepare an IEP, even if a claim for reimbursement has been filed" and adding for parentally placed private school students, "the district only needs to prepare an IEP if the parents ask for one"). It was as if the Parents chose private school all along and, with that, chose to pay out of pocket.

Therefore, the Court affirms Officer Frazek's determination that Portland need not pay John's tuition at Aucocisco for the fall of his sixth grade year. Portland's motion for judgment is therefore granted insofar as it seeks an order determining Portland is not required to fund John's placement at Aucocisco for the beginning of his sixth grade year through January 4, 2026. The Parents' motion is therefore denied insofar as it seeks affirmance of this payment. Pursuant to the Court's power

to "grant such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C), the Court also concludes that Portland did not owe John an IEP at the start of the sixth grade school year.

**b. The Court Otherwise Reverses the Hearing Officer—Portland Is Not Responsible for John's Aucocisco Tuition for the Pending of the Administrative Proceedings**

The Parents claim Officer Frazek erroneously concluded Portland's obligation exists only through the pendency of the administrative proceedings "and not beyond," which is contrary to law. *Defs.' Opp'n* at 8-9. Portland counters that Officer Frazek "committed legal and factual error by finding that John's stay put placement is Aucocisco from January 5, 2026 through the conclusion of the administrative proceedings" and that "error allowed the [Officer Frazek] to order Portland to fund John's attendance at Aucocisco during the pendency of the administrative hearing." *Compl.* ¶ 49.

The Court agrees with Portland. For the reasons already discussed, the IDEA's stay-put provision does not apply to John who has neither a placement nor an agreement. Thus, Portland has no obligation to fund John's tuition. Likewise, for the same reasons the Court affirms Officer Frazek's Amended Order stating Portland is not responsible for John's Aucocisco tuition at the beginning of sixth grade, the Court also reverses that Amended Order insofar as it is construed to order Portland pay for Aucocisco during the pendency of administrative proceedings. Indeed, there is no order by any hearing officer that the school district failed to provide a FAPE or that Aucocisco is appropriate. Therefore, the Court also grants Portland's motion for

a preliminary injunction insofar as it seeks a Court order determining that Portland is not required to fund John's placement at Aucocisco.

### B. Miscellaneous Relief

#### 1. The Court Declines to Strike Portions of the Amended Order Parents' Motion to Enforce Maintenance of Placement

The Parents ask the Court to strike portions of Officer Frazek's Amended Order. *Defs.' Countercl.* at 8-9. In that order, Officer Frazek wrote:

> Parents appear to come into this stay put dispute with unclean hands. With a sense of disingenuousness, Parents sent Portland an invoice mid-September, 2025 for a full year of Aucocisco tuition, being fully aware that their reimbursement and Student's placement at Aucocisco terminated at the end of the 2024-2025 school year. Instead of an invoice, a good faith communication by Parent would have been to inquire of Portland as to "what's next" now that the former agreement had come to an end. The issue of stay put appears to be more about money than a dispute over the Student's educational programming.

*Admin. R.* at 92. The Parents claim this portion of Officer Frazek's order contains extraneous and erroneous findings of fact. *Defs.' Countercl.* at 8-9. When dealing with issues that implicate factual determinations made by the administrative agency, District Courts give more deference to the hearing officer's findings. *Lamoine Sch. Comm. v. Ms. Z. ex rel. N.S.*, 353 F. Supp. 2d 18, 29-30 (D. Me. 2005) (noting first the Court reviews the record and second "appropriate deference is given the Hearing Officer and his expertise, particularly with regard to factual determinations"); *cf. J.B. v. Wells-Ogunquit Cmty. Sch. Dist.*, 2014 U.S. Dist. LEXIS 119065, at *11 (D. Me. Aug. 18, 2014) ("Even as to findings of fact, the court retains the discretion, after careful consideration, 'to accept or reject the findings in part or in whole'") (citing

*Town of Burlington v. Department of Educ.*, 736 F.2d 773, 792 (1st Cir. 1984), *aff'd* 471 U.S. 359, (1985)).

Based on the record before the Court, the Court understands how Officer Frazek arrived at these factual conclusions. When the Settlement Order expired at the end of the regular 2022-2025 school year, the Parents had an entire summer before John's sixth grade year to request a new IEP or clarify with Portland about where John would be placed for free. Instead, over a year later the matter is before Officer Frazek as John enters seventh grade. In deference, the Court declines to strike the objected-to-portions of the Officer Frazek's order.

#### 2. The Court Moots Portland's Motion to Supplement the Record

The IDEA directs that a court reviewing state educational proceedings "receive the records of the administrative proceedings" and "hear additional evidence at the request of a party[.]" 20 U.S.C. § 1415(i)(2)(C)(i) & (ii). Nonetheless, the First Circuit has clarified that "a party has no absolute right to adduce additional evidence upon request" but instead "'must provide some solid justification for doing so.'" *Mr. & Mrs. V. ex rel. H.V. v. York Sch. Dist.*, 434 F. Supp. 2d 5, 6-7 (D. Me. 2006) (quoting *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 996 (1st Cir.1990) (citation and internal punctuation omitted)). However, in reaching the foregoing conclusions, the Court did not engage the additional evidence presented by the parties and therefore moots Portland's motion to supplement the record.

### C. The Limits of the Court's Order

In sum, the Court holds the Parents have failed to show entitlement to a stay-put order codified at 20 U.S.C. 20 U.S.C. § 1415(j). In doing so, the Court has not determined the best outcome for John Doe's education. Federal judges possess neither the authority nor the expertise to make that call. *Roland M.*, 910 F.2d at 989 ("Jurists are not trained, practicing educators. Thus, the statutory scheme binds trial courts to give due weight to the state agency's decision in order to prevent judges from imposing their view of preferable educational methods upon the States") (citations and internal punctuation omitted).

## V. CONCLUSION

The Court GRANTS Portland's Motion for Preliminary Injunction (ECF No. 5). The Hearing Officer's Amended Order is ENJOINED insofar as it determined Aucocisco was John Doe's stay-put placement and Portland was responsible for the tuition from January 5, 2026 through the pendency of the administrative proceedings. Portland's Complaint (ECF No. 1) is GRANTED and the Parents' Answer and Counterclaim is denied (ECF No. 15), consistent with the Court's order. The Court also MOOTS Portland's Motion to Permit Presentation of Additional Evidence (ECF No. 20).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of August, 2026